McHENRY v. COOPER.

1. Mortgage: FORECLOSURE: REDEMPTION.　A junior mortgagee, after his debt has been fully satisfied, has no right of redemption, which he can exercise himself or transfer to another, from a prior sale made under foreclosure of a senior mortgage to which he was not a party.

2. —— Nor is the rule varied by the fact that the junior mortgage is in the form of an absolute conveyance, and that the mortgagee, after payment by the mortgagor and at his request, executes a conveyance of the premises to a third party. All right of redemption being extinguished by payment of the mortgage, none is transferred by the conveyance.

3. —— REDEMPTION BY SUBSEQUENT CREDITOR. An ordinary judgment creditor (or a surety subrogated to his rights by payment of the judgment) whose judgment was rendered subsequent to a decree of foreclosure in favor of a third party, but before a sale thereunder, has, it would seem, under the statute, by virtue of the lien of his judgment on the mortgagor's interest in the mortgaged premises, the right to redeem at any time before sale. But, if this right is not exercised before sale, it will thereby be as effectually barred as if the creditor had been made a party to the foreclosure proceeding, or subsequently brought in for the purpose of cutting off his right.

*Appeal from Polk District Court.*

TUESDAY, APRIL 27.

THE plaintiff, claiming to be the fee simple owner of lot 1, B 11, Des Moines, filed a bill against Cooper *et al.* to quiet his title. The defendants, except Cooper, disclaimed all interest. Cooper filed a cross-bill denying the absolute nature of the plaintiff's right, and claiming the right to redeem the property from the mortgage foreclosure and sale under which plaintiff derives his title. The material facts relating to the respective claims of the parties are necessary to be stated.

*Facts concerning plaintiff's claim.* — C. W. Nash originally owned the lot in question. January 31st, 1857, Nash mortgaged this lot to Robertson & Missick, of Kentucky, to secure $2,360. This mortgage was duly recorded February 2d, 1857, and is the oldest conveyance or lien.

On the first of October, 1858, Nash conveyed the property to Chittenden & Sears by a deed absolute in form, but in reality to secure them a debt of about $1,300 for which they held his (Nash's) note.

This deed states that it is made subject to the Robertson & Missick mortgage above named. At the time Nash thus conveyed to Chittenden & Sears, they made a parol agreement with him to convey the property back to him, or such person as he should designate, when their debt was paid.

In November, 1859, the McHenrys became the assignee of the Robertson & Missick mortgage, and in March, 1860, recovered a decree in the Polk District Court foreclosing the same. The amount of this decree was $2,620, and the property was ordered to be sold to satisfy the same. To this foreclosure proceeding and decree Nash was a party, but Chittenden & Sears were not. The decree is regular as against Nash.

June 1st, 1861, the lot was sold under the decree to the McHenrys, who received a sheriff's deed therefor, and in March, 1865, the one McHenry (W. H.) conveyed his interest in the property to M. D. McHenry, the plaintiff herein. In December, 1865, McHenry sold part of the lot by warranty deed to Eaton, and in September, 1867, Eaton conveyed to Dewey (one of the defendants to Cooper's cross-bill), and afterward, McHenry mortgaged the remaining portion of the lot to Quimby (also made defendant to Cooper's cross-bill). On the 30th of March, 1863, the lot was sold for the taxes of 1857, '58, '59, '60,

and '61, to one Walker, who assigned the certificate to Allen, who (Oct. 5th, 1865) assigned the same to the plaintiff, to whom (Nov. 20, 1867), the tax deed was executed. The plaintiff claims title under this tax deed, as well as under the sheriff's deed made in pursuance of the foreclosure sale before mentioned. The principal questions arise between the plaintiff and Cooper.

*Facts concerning Cooper's claim.* In October, 1859, Cooper became the surety of Nash on a note (not secured by mortgage) to Robertson, and on the 7th day of September, 1860 (which was after the date of the decree of foreclosure against Nash, but *prior* to the sheriff's sale thereunder) Robertson obtained a judgment thereon against Nash and Cooper for $689.92, which the defendant Cooper in a few days thereafter paid off out of his own money. With the exception of $100 paid by Nash to Cooper, July 5th, 1866, Cooper has never been repaid the amount thus paid by him for Nash. Nash removed to Minnesota, and in 1863 suit was commenced against him in that State by Chittenden & Sears on their notes; and in April, 1866, Nash paid to the attorney of Chittenden & Sears the balance due thereon, received the notes, and states in his deposition that he cannot now produce them, because he presumes they are destroyed. About 18 months after Nash had paid off the debt to Chittenden & Sears he procured them to execute a conveyance of the lot to Cooper by a deed of quit-claim absolute on its face. Cooper did not furnish Nash with the money to pay Chittenden & Sears, nor did he (Cooper) pay Chittenden & Sears any consideration for the deed, and he knew when he received the quit-claim from them that they had never claimed any interest in the property, except as a security for their debt. The plaintiff, M. D. McHenry, claims he owned said property by reason of his purchase under the Robertson & Missick mortgage, and

also by reason of the treasurer's tax deed above set out, and asks that the conveyance from Chittenden & Sears to defendant Cooper be set aside as a cloud upon his title, and claims that the conveyance from Nash to Chittenden & Sears was a mortgage; that Nash paid the same off before Chittenden & Sears conveyed to Cooper, and that Cooper obtained no title by such conveyance to him. The defendant Cooper files a cross-bill against M. D McHenry, J. N. Dewey and I. Quimby, claiming the right to redeem the property from them, because:

1. Chittenden & Sears, who owned Nash's equity of redemption in the property, were not made parties to the Robertson & Missick foreclosure suit against Nash and wife, and their equity was not cut off by the decree in that case — that the defendant Cooper is now the owner of such equity by deed from Chittenden & Sears, and as such has a right to redeem.

2. That if the conveyance from Nash and wife to Chittenden & Sears was in fact a mortgage, and Nash had paid the same off before Chittenden & Sears deeded the property to Cooper, such payment and conveyance was made in pursuance of an agreement between Nash, Chittenden & Sears and Cooper, that, when Chittenden & Sears were paid, said property was to be conveyed by them to the defendant Cooper in consideration of the amount he (Cooper) had to pay Robertson on the judgment against Nash and Cooper as above set out, and that it was not only the intention to keep said mortgage alive for Cooper's benefit, but that it was greatly to his interest to do so.

3. That the judgment of Robertson against Nash and Cooper was a lien on the equity of Nash to redeem from the Chittenden & Sears mortgage (if one); that when Cooper paid it off, he, being surety of Nash, was subrogated to the rights of Robertson in the said judgment,

and has a right to redeem the Chittenden & Sears mortgage ; that, having procured the debt due Chittenden & Sears to be paid off, and the property (covered by the mortgage) to be conveyed to him, he has thereby the right to redeem from the Robertson & Missick mortgage.

4. That the plaintiff McHenry acquired no title to the mortgaged property by reason of his treasurer's deed, because the taxes for which it was sold were all assessed after the execution of the Robertson & Missick mortgage, and a good part of them after he went into possession of the property under his forclosure sale (and at the time he purchased said property, he undertook and agreed to pay the taxes then due on the property), and it was his duty to pay the same.

The defendants Polk and Hubbell disclaim any interest in the property, and deny all conspiracy with Cooper, etc. Dewey and Quimby, who were made defendants to Cooper's cross-bill, appear and answer, denying his right to redeem. A trial was had, and the court below sustained the defendant Cooper's right to redeem the property from the Robertson & Missick mortgage, and ordered plaintiff's bill dismissed, and from this decree plaintiff and Dewey and Quimby appeal.

*M. D. McHenry, Withrow & Wright, Philips, Gatch & Philips* for the appellants.

*Polk, Hubbell & Barcroft,* for Cooper, appellee.

DILLON, Ch. J. — It is claimed by the counsel of Cooper that there was an agreement between Cooper, Nash, and 1. MORTGAGE: Chittenden & Sears to the effect that, when the foreclosure: redemption. latter were paid off, they were to convey the property to Cooper in consideration of the amount which he had paid or might have to pay, as the surety of Nash

on the Robertson note and judgment, mentioned in the statement of facts. Had such an agreement been established, that is to say, had it been shown that Chittenden & Sears *agreed* to hold the property in trust for Cooper as well as for themselves, and that, after they had been paid, they made the conveyance to Cooper in pursuance of this agreement, the rights of the latter would be greater and different than they now are. But from the testimony of Cooper himself (whose evidence bears upon its face all of the credentials of truth and candor) it is apparent that no such agreement was made, to which he was a party. On the contrary, he had refused to take security on the lot when offered to him by Nash. Nor did Chittenden & Sears ever come under any obligation to Cooper or to Nash for Cooper's benefit. And respecting this lot, it is manifest that Cooper had no right by virtue of any contract or agreement with Nash or Chittenden & Sears, which he could have enforced against either of them or the property.

Chittenden & Sears held the property for one purpose and one only, to wit: as a security for their notes against Nash. The only agreement they made with Nash was that when their debt was paid they would convey to Nash, or to *any* person he might name. They never agreed to convey to Cooper, nor does it appear that they, at any time, before the conveyance to him, which was as late as 1867, knew that there was any such person in existence. In the spring of 1866, Nash, with his own money, and without the knowledge, aid or procurement of Cooper, finished paying off his debt to Chittenden & Sears. He received the notes, and, instead of assigning them to Cooper, he destroyed them, and they are no longer *in esse*. And it is not until eighteen months afterward, viz. : not until November 13th, 1867, that Chittenden & Sears convey to Cooper. This conveyance was not made because they

McHenry v. Cooper.

had ever agreed to do it, or because Cooper, by virtue of any agreement, could have enforced it, but simply because their debt was paid and Nash requested it. It was a matter of indifference to them to whom they conveyed the property. Independently of the alleged agreement Cooper bases his right to redeem from the mortgage foreclosure and sale upon two grounds : First, by virtue of the rights which he acquired by reason of the conveyance of Chittenden & Sears to him ; second, by reason of the rights which the law confers upon him, for having, as surety, paid off the Robertson judgment of September 7, 1860, against Nash and himself. Of these, briefly, in the order stated. The date of the conveyance of Chittenden & Sears to Cooper, and the circumstances under which it was made, may be seen from the preceding portion of this opinion and the statement prefixed thereto. Chittenden & Sears held the property simply as a security — as a mortgage. They never had or claimed to have any other or greater interest in it. Their lien was *junior* to the mortgage under which the plaintiff claims. As they were not made parties to the foreclosure suit, their right to redeem would not be barred by the decree and sale. Had their debt not been paid, it is clear that they could redeem from the plaintiff. But after their debt was paid it is, to our minds, equally clear that they had no interest whatever in the property at law or in equity. Hence, if they had filed a bill to redeem, after their debt had been satisfied, it would have been dismissed because they had no interest on which the right to redeem could attach. Why allow a satisfied mortgagee to redeem? He has no interest which would be affected by the sale; none to protect by making redemption. And Chittenden & Sears were in fact nothing but mortgagees, with no greater rights as between them and Nash or the prior mortgagees than if the defeasance, instead of resting

in parol, had been written out in their deed. It is to be borne in mind that we are not dealing with the interest of *bona fide* purchasers from Chittenden & Sears, who might have been misled by the fact that they held a deed absolute on its face. Cooper before taking the conveyance from Chittenden & Sears had full notice that the title had been conveyed to them simply to secure a debt, and that this debt had been paid. Nor did Cooper pay Chittenden & Sears any consideration whatsoever for the quit-claim deed which they executed to him, and upon which he bases his right to redeem. It is also to be remembered that, in the view of this court, as exhibited in previous decisions, a mortgage is primarily and chiefly a security or lien on land rather than an estate in it, and equity will so regard the conveyance to Chittenden & Sears, although it might, notwithstanding the statute (Rev. § 2217), a point which need not be ruled, pass the bare legal title. But, conceding that it would pass the legal title to Chittenden & Sears, it was in equity simply a mortgage, and Nash was still the beneficial owner. When Chittenden & Sears were paid off they had no more right to redeem from a prior mortgage than if the instrument securing their debt had been in the form of a mortgage instead of a deed absolute. Nor could they, after they had been paid off by the debtor, and the notes had been destroyed by him, convey to him a right to redeem, nor to a third person at his instance. In other words — and the proposition really settles this controversy — the rights of the plaintiff and those claiming under him, and the rights of Nash and Chittenden & Sears and of Cooper are precisely the same, neither more nor less nor different in this suit, which is in equity, where the *form* of instrument is controlled by the underlying equities of the parties thereto, as if the deed from Nash to Chittenden & Sears, instead of being unconditional in form (as it was in essence), had been an ordi-

nary mortgage with the condition fully written out therein. The relations of the parties then are these: Robertson & Missick, under whom plaintiff claims, are the first mortgagees. Chittenden & Sears are junior mortgagees. The first mortgage is foreclosed, making the mortgagor a party defendant. Notwithstanding his absolute deed to Chittenden & Sears, Nash was still the beneficial owner of the property and had a right to redeem from the first as well as the second mortgage. He was therefore properly a defendant to the foreclosure proceeding, and that proceeding is not, as argued by the appellee, a nullity. The question would be different if the conveyance by Nash to Chittenden & Sears had been absolute in reality as well as in form, and to such cases the authorities cited and relied on by the appellee can only apply. Nash having the right to redeem, and being a proper party to the foreclosure proceeding, the effect of the sale under the decree and the deed made pursuant thereto was to bar and foreclose his right to redeem from the mortgage which was foreclosed. Chittenden & Sears as junior mortgagees were proper but not necessary parties, and the effect of omitting them was to allow a right of redemption to continue in their favor. If they had never been paid their debt they could have redeemed from the plaintiff's sale under the mortgage. But when their debt was satisfied, their mortgage was, in equity, just as fully discharged as if a conveyance had been made. A second mortgagee, whose debt has been fully satisfied, cannot, as we have before observed, redeem from a prior sale made by the first mortgagee. Nor can he invest the mortgagor whose right has been barred, or a third person, with a right to redeem when he himself has ceased to have that right. It is claimed by Cooper that, although Nash fully paid the Chittenden & Sears' mortgage (if it is regarded as a mortgage), and received the notes secured

thereby, and destroyed the same ; yet that equity will keep the mortgage alive, because it was the interest of parties that this should be done. If the payment to Chittenden & Sears had been made by Cooper, or with money which he had furnished, there would be a strong equity in his favor to be subrogated to all the rights of Chittenden & Sears. But Nash, when he paid Chittenden & Sears, paid his own debt with his own money, and after it was thus paid, had no right subsequently to revive it, and treat it as an existing debt, and to redeem by virtue thereof.

We next consider whether Cooper could redeem by virtue of the judgment of *Robertson* v. *Nash*, and himself. 2. —— *redemption by subsequent creditor.* This was an ordinary judgment at law, rendered after the decree of foreclosure, which is the basis of the plaintiff's title, but before the sale thereunder. In this judgment Cooper was surety. He paid it, soon after it was rendered, out of his own money. It is argued that by such payment he became subrogated to the rights of Robertson, the plaintiff, in that judgment, and could enforce it just the same as Robertson could if it had not been paid ; that this judgment attaches as a lien upon all the rights of Nash in the property, and especially upon his (Nash's) right to redeem from the Chittenden & Sears mortgage, and if so it would not be in the power of Nash or Chittenden & Sears by any act of theirs, such as the payment of the second mortgage, to defeat such lien. And Cooper, by virtue of such judgment lien, might redeem from the second mortgage, which he did by getting the deed from Chittenden & Sears, with Nash's consent. Undoubtedly the effect of the payment of his judgment by Cooper, the surety, was to subrogate him to all the rights of the judgment plaintiff ; but he could have no greater rights. What rights would the judgment plaintiff have as against the foreclosure proceeding and decree ? He was not a neces-

sary party to the foreclosure proceeding, because his judgment was rendered after the foreclosure decree. But it was rendered before the sale under the decree. Under our statute the judgment would be a lien on Nash's interest, and by virtue thereof Cooper could have redeemed from the decree at any time before a sale thereunder, but not under the law then in force, *after* the sale. Under the circumstances it was not necessary for the plaintiff in the decree to bring in the subsequent judgment creditor in order to cut off his rights by a sale. The right of this subsequent judgment creditor to redeem, and of Cooper as subrogated to his rights, was just as effectually barred by the foreclosure sale as if such judgment creditor had been made a party to the foreclosure proceeding. *Cooly* v. *Brayton*, 16 Iowa, 10. But it is argued that Nash's right to redeem from the second mortgage — *id est.*, the mortgage to Chittenden & Sears, was not barred by the foreclosure and sale, and if not, then Cooper possesses such right. The difficulty is, that Nash afterward voluntarily paid off the second mortgage, and wholly extinguished it, and this is not an application to redeem from that, but from the first mortgage. In any view we have been able to take of the case, we have failed to discover the equity of the defendant. The plaintiff bought the property at a fair if not a full price, some six years before Cooper obtained his quit-claim. During that time he supposed he was the owner, and paid several hundred dollars back taxes and assessments. Dewey and Quimby had acquired rights in good faith, under the plaintiff. The property had advanced in value until it was at length an object to redeem. Cooper had refused to take security on the lot when it was offered to him by Nash. The attempt to get behind the decree and sale is an afterthought — wholly the work of Nash — and we may be pardoned for expressing the opinion that it is a

scheme which has nothing, either in the circumstances disclosed in the record or in the rules of law, to commend it to the sanction of a court of equity. The decree of the District Court is reversed, and a decree will be here entered dismissing the cross-bill of Cooper, and ordering a decree for the plaintiff as prayed in his petition.

